## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

KENDRICK TUCKER,            )
                          )
           Plaintiff,       )
                          )
v.                         )      Case No. 22-CV-109-DES
                          )
CARDINAL GLASS INDUSTRIES, INC.    )
                          )
           Defendant.     )

## OPINION AND ORDER

This matter comes before the Court on Defendant Cardinal Glass Industries, Inc.'s ("Cardinal" or "Defendant") Motion for Summary Judgment and Brief in Support (Docket Nos. 27 and 28). For the reasons set forth below, Defendant's Motion for Summary Judgment is GRANTED.

### I.   Background

Plaintiff filed this action on April 7, 2022.  (Docket No. 2). In his Complaint, Plaintiff alleges claims against Defendant for race and/or color discrimination, harassment, hostile work environment, and/or retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* and/or 42 U.S.C. § 1981. (Docket No. 2 at 2). Defendant filed its Answer on July 20, 2022 (Docket No. 15) and discovery commenced. On April 24, 2023, Defendant filed its Motion for Summary Judgment and Brief in Support. (Docket Nos. 27 and 28).

According to Defendant's Statement of Material Facts, Plaintiff Kendrick Tucker, ("Plaintiff" or "Mr. Tucker") was employed by Cardinal as a Cold End Technician from December 9, 2019, until February 17, 2020. (Docket No. 28 at 2). During his short employment with Cardinal, Mr. Tucker received multiple written warnings for absenteeism and one written warning for an incident on January 15, 2020. *Id.*  On that day, Mr. Tucker left his workstation and told his trainer

that he was going to the bathroom. Instead, he and another employee, Kenward Goosby ("Mr. Goosby"), went to a different area where they talked for approximately half an hour before going home. *Id.* Cardinal determined that Mr. Tucker and Mr. Goosby were away from their designated work areas and did not perform any work, therefore both received write-ups. (Docket No. 30 at 2).

On January 23, 2020, Mr. Tucker told his shift manager, Landon Shaw, that he wanted to file a racial discrimination charge against his supervisor, Collin Boner ("Mr. Boner"). (Docket No. 28 at 3). Mr. Tucker explained to Mr. Shaw that the bases for his racial discrimination claims were the following instances: (i) after returning from lunch in his car with his wife, Mr. Boner told him he could not take breaks in the parking lot; (ii) he and Mr. Goosby (the only black employees) were written up on January 15, 2020, despite white employees also being away from their workstations; (iii) Mr. Boner "always" separated him and Mr. Goosby, preventing them from working together; (iv) when he asked for permission to sleep in his car on break, Mr. Boner indicated employees were not permitted to sleep at work, but later did not say anything to a white employee asleep in the break room; and (v) when he asked Mr. Boner if he had a problem with him, Mr. Boner smirked and said "No." *Id*.

On January 23, 2020, Ron Erickson, Human Resources Manager for Cardinal Glass, met with Mr. Tucker to go over his concerns about Mr. Boner. *Id.* at 5. He also investigated the write-up Mr. Tucker received on January 15, 2020, by speaking with each supervisor and reviewing security camera footage of the day when the write-up was given. *Id.* Mr. Erickson determined that while the write-ups were "technically correct" because Mr. Tucker and Mr. Goosby were away from their workstations and did not perform any work while the white employees were at their assigned work areas and performing at least some work, there was an appearance of bias and therefore the write-ups were to be removed from Mr. Tucker and Mr. Goosby's files. *Id.* No

additional action was taken against Tucker for this incident. To address his concerns with Mr. Boner, Mr. Tucker was offered a transfer to a different shift so that he would not have to report to Mr. Boner, which Mr. Tucker accepted. *Id.*

On February 6, 2020, a fire broke out in the "hot end" of the plant. *Id.* at 6. Even though he was employed in the "cold end," Mr. Tucker, Mr. Goosby, and another employee, Tracy Joslin, were recruited to help with cleanup. *Id.* On their way to the cleanup, they met another employee, Danny Holland, who said "hey, you all got to be careful, they got those KKK hoods on down there." *Id.* Defendant notes that Cardinal provides employees in the "hot end" of the plant with hoods that look like ski masks to protect them from high temperatures. *Id.* Approximately five or six employees wearing these hoods approached Mr. Tucker and his group, and one employee lifted his hood and said, "ooh, scary isn't it?" *Id.* At no point did anyone physically harm Mr. Tucker or make any threats of harm to him. *Id.* Mr. Tucker finished his workday and said nothing of these comments until February 14, 2020, when he went to Landon Shaw and told him what was allegedly said. *Id.* at 6-7.

Mr. Shaw told Tucker to take the weekend off and he would set up a meeting with HR on Monday. *Id.* at 7. Cardinal investigated Mr. Tucker's complaints about racial comments. Each person that Mr. Tucker accused of making racial comments and those who Mr. Tucker identified as witnesses were interviewed and provided written statements.[1] *Id.* at 8. Following this investigation, Cardinal determined there was insufficient evidence to support Mr. Tucker's allegations of racial comments. *Id.* In fact, Cardinal discovered from speaking with the other employees that Mr. Tucker himself had been making racial comments, including joking about

---

[1] Plaintiff denies that all witnesses involved gave written statements because Mr. Goosby did not provide a written statement. According to the declaration of Mr. Erikson, Mr. Goosby declined to be involved. *See* Docket No. 40, Exhibit A. Despite this, neither party attempted to depose Mr. Goosby regarding these claims.

wearing a "KKK" hood and stating "you wouldn't know my color" under the hood. *Id.* Additionally, Mr. Tucker was overheard stating he needed money and that if someone did something or said something racial he could get money from Cardinal. *Id.* Finally, it was determined that employee Chance Sinor made the "scary isn't it" comment, but explained he made it in reference to the pandemonium the fire caused, not anything racial. *Id.*

Mr. Tucker attended a meeting with HR on Monday, February 17, 2020, where they informed him that the discriminatory comments were not substantiated. *Id.* Mr. Tucker was not happy and asked to speak with the Plant Manager, who was unaware of the accusations or the investigation. *Id.* at 8-9. In order to give him an opportunity to look into the issues, the Plant Manager offered to switch Tucker to a different shift so that he would not quit. *Id.* at 9. Despite these attempts to resolve the issues, Mr. Tucker resigned his employment. *Id.*

Plaintiff disputes a number of the facts presented by Defendant in his Response to the Motion for Summary Judgment (Docket No. 37). Notably, his disputes are not focused on the actual facts, but rather on adding commentary to the facts presented by Defendant. *Id.* at 2-5. The only real disputed fact is whether Plaintiff suffered any adverse action to his employment based on the write-up from the January 15, 2020 incident, which Plaintiff alleges was never removed from his record. *Id.* at 2-3. Plaintiff also alleges that he was subjected to a hostile work environment in light of the unequal disciplinary action, the racial comments, and the physical threats made to him on February 6, 2020. *Id.* at 10-11. Lastly, Plaintiff alleges that this series of issues led to his constructive discharge. *Id.* at 12-13. For the reasons set forth below, Plaintiff has not presented sufficient evidence to prove an adverse employment action, hostile work environment, or constructive discharge and therefore, Defendant's Motion for Summary Judgment IS GRANTED.

II.      Analysis

Under Fed. R. Civ. P. 56(a), summary judgment is appropriate only if the moving party demonstrates that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law.  A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact, and the Court draws all reasonable inferences in favor of the nonmovant. *Georgelas v. Desert Hill Ventures, Inc.,* 45 F.4th 1193, 1197 (10th Cir. 2022). The nonmovant must then make a showing sufficient to establish an inference of the existence of each element essential to his case. *Bolden v. PRC, In*c., 43 F.3d 545, 548 (10th Cir. 1994). "If a party that would bear the burden of persuasion at trial does not come forward with sufficient evidence on an essential element of its prima facie case, all issues concerning all other elements of the claim and any defenses become immaterial," and the moving party is entitled to summary judgment. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671(10th Cir. 1998).

A.      Plaintiff's Claim for Race Discrimination

Title VII of the Civil Rights Act of 1964 makes it unlawful "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A Title VII plaintiff can prove racial discrimination "either (1) by direct evidence that a workplace policy, practice, or decision relies expressly on a protected characteristic, or (2) by using the burden-shifting framework set forth in [*McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)]." *Young v. United Parcel Serv., Inc.,* 575 U.S. 206, 206 (2015).

Plaintiff contends that Defendant's actions following the January 15, 2020, write-up are evidence of "direct discrimination" because Defendant admitted there was an "appearance" of bias and because the write-up was supposed to be removed from Plaintiff's record but never was. (Docket No. 37 at 8.) In its Reply, Defendant argues that Plaintiff is incorrect regarding "direct evidence of discrimination." (Docket No. 40 at 5). "Direct evidence is evidence from which the trier of fact may conclude, without any inference, that the employment action was undertaken because of the employee's protected status." *Sanders v. Sw. Bell Tel., L.P.,* 544 F.3d 1101, 1105 (10th Cir. 2008). "Statements of personal opinion, even when reflecting personal bias or prejudice, do not constitute direct evidence of discrimination, but at most, are only circumstantial evidence of discrimination because the trier of fact must infer discriminatory intent from such statements." *Hall v. U.S. Dep't of Lab., Admin. Rev. Bd.,* 476 F.3d 847, 855 (10th Cir. 2007). As such, Defendant's statement that the warning Plaintiff received, although "technically correct" created an "appearance of bias" was not direct evidence of discrimination. Because Plaintiff has failed to cite to any direct evidence of discrimination, Plaintiff must rely upon the burden-shifting framework set forth in *McDonnell Douglas.*

Under that framework, a plaintiff must first establish a prima facie case of discrimination. *McDonnell Douglas,* 411 U.S. at 802.[2] To establish a prima facie case of race discrimination under Title VII,[3] Plaintiff must show: 1) he is a member of the class protected by the statute; 2) he suffered an adverse employment action; 3) he was qualified for the position at issue; and 4) he was treated less favorably than others not in the protected class. *Sanchez v. Denver Pub. Sch.,* 164 F.3d

---

[2] If the plaintiff succeeds in making a prima facie case, then the employer must have an opportunity to articulate some legitimate, non-discriminatory reason for its action. *Young,* 575 U.S. at 206. If the employer articulates such a reason, then the burden shifts back to the plaintiff to prove the employer's proffered reason was pretextual. *Id.*

[3] Plaintiff also asserts a claim of race discrimination under 42 U.S.C. § 1981. However, the standards and burdens are the same for both § 1981 and Title VII claims. Thus, the analysis is the same for both claims. *See Aramburu v. The Boeing Co.,* 112 F.3d 1398, 1410 (10th Cir. 1997).

527, 531 (10th Cir. 1998).  The first and the third elements are seemingly admitted. Defendant acknowledges that Plaintiff was a "black employee" (Docket No. 28 at 2); therefore, as an African American, Plaintiff is a member of a class protected by statute. Furthermore, Plaintiff was seemingly qualified for his position since not only was he employed, *id.*, his supervisors and plant manager wanted him to continue with his employment. *Id.* at 9.

The question for the Court, then, is whether Plaintiff suffered an adverse employment action. An adverse employment action "includes significant changes in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Piercy v. Maketa,* 480 F.3d 1192, 1203 (10th Cir. 2007) (quotation omitted).  But "a mere inconvenience or an alteration of job responsibilities" does not qualify as an adverse employment action. *Id.* (quotation omitted). Plaintiff has not presented any evidence to show that the January 15, 2020, write-up was in any way adverse to his position and nothing in the record suggests the write-up affected his employment with Defendant. Plaintiff argues that he was "constructively discharged with the January 15, 2020, write-up still on his record" (Docket No. 37 at 8), but there is no evidence presented to suggest that this, in and of itself, adversely affected Plaintiff. "A written warning may be an adverse employment action only if it effects a significant change in the plaintiff's employment status." *Haynes v. Level 3 Commc'ns, L.L.C.*, 456 F.3d 1215, 1224 (10th Cir. 2006). Neither party presents evidence showing that Plaintiff suffered any changes in his employment status, pay, or hours as a result of the January 15, 2020, write-up. At the hearing on this Motion, Plaintiff argued he believed the write-up on his record would have prevented him from continuing his employment at Cardinal after his probationary period was up. However, this argument is pure speculation because Plaintiff left his employment before the probationary period ended. Thus, the January 15, 2020, write-up does not

constitute an adverse employment action. Because Plaintiff fails to show that he suffered an adverse employment action, he cannot establish a prima facie case of racial discrimination.

B.    Plaintiff's Claim of Hostile Work Environment

Plaintiff alleges the culmination of his issues with management, including the write-up from January 15, 2020, combined with his experiences of racial remarks and "physical threats" made on February 6, 2020, when Plaintiff participated in the fire cleanup, are evidence of a hostile work environment. (Docket No. 37 at 10). For this claim to survive summary judgment, Plaintiff must show that "under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was racial or stemmed from racial animus." *Bolden,* 43 F.3d at 551 (internal citation omitted). To determine whether a workplace environment rises to the level of hostile, the court "consider[s] such factors as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Throupe v. University of Denver,* 988 F.3d 1243, 1252 (10th Cir. 2021) (quotation omitted). "General harassment if not racial or sexual is not actionable. The plaintiff must show 'more than a few isolated incidents of racial enmity.'" *Bolden,* 43 F.3d at 551 (quoting *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1412 (10th Cir. 1987)). "Instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments." *Id.* (citing *Hicks*, 833 F.2d at 1412-13).

The facts presented in the instant case show only a few isolated statements that may be perceived as racial. Danny Holland's statement that "hey, you all got to be careful, they got those KKK hoods on down there" and Chance Sinor's "scary isn't it" statement later that day (Docket No. 28 at 6 & 8 and Docket No. 37 at 10-11) constitute the totality of the racial comments that

8

make up Plaintiff's claim for a hostile work environment. (Docket No. 37 at 11-12). These two isolated incidents are far from the "steady barrage" of discriminatory conduct necessary to establish pervasiveness. *Bolden,* 43 F.3d at 551 (quoting *Hicks,* 833 F.2d at 1412). As to severity, the Court notes that isolated incidents, such as those present here, "are sufficient to support a hostile work environment only when they are 'threatening and severe' or 'especially egregious or extreme.'" *Brown v. LaFerry's LP Gas Co.,* 708 F. App'x 518, 522 (10th Cir. 2017) (quoting *Morris v. City of Colo. Springs,* 666 F.3d 654, 666-67). "Most incidents found to meet this standard involve some kind of physical assault." *Id.* Although Plaintiff alleges in his Response to Summary Judgment that the statements made were "physical threats" that suggested "physical harm," *id.* at 10-11, his own deposition testimony establishes that at no point did anyone ever physically assault or threaten him. (Docket No. 29, Exhibit A at 139:13-19). Plaintiff makes no allegations of physical assault and the facts he alleges "'do not rise to the extreme level of conduct' required for isolated incidents to give rise to a cognizable claim for a hostile work environment." *Brown,* 708 F. App'x at 522 (quoting *Morris*, 666 F.3d at 667-68). Thus, the Court finds that under the circumstances, the alleged conduct was neither severe nor pervasive enough to alter the terms, conditions, or privileges of Plaintiff's employment and Plaintiff cannot establish a prima facie case of hostile work environment.

C.      Plaintiff's Claim of Constructive Discharge

Finally, Plaintiff alleges Defendant's actions led to his constructive discharge. "Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004). Constructive discharge occurs when "the employer by its illegal discriminatory acts has made working conditions so difficult that

a reasonable person in the employee's position would feel compelled to resign." *Derr v. Gulf Oil Corp.,* 796 F.2d 340, 344 (10th Cir. 1986). "Essentially, a plaintiff must show that he had 'no other choice but to quit.'" *Yearous v. Niobrara Cnty. Mem'l Hosp.*, 128 F.3d 1351, 1356 (10th Cir. 1997) (quotation omitted). The conditions of employment must be objectively intolerable; the "plaintiff's subjective views of the situation are irrelevant." *Id.* "The plaintiff's burden in a constructive discharge case is substantial . . . because a constructive discharge requires a showing that the working conditions imposed by the employer are not only tangible or adverse, but intolerable." *E.E.O.C. v. PVNF, L.L.C.,* 487 F.3d 790, 805 (10th Cir. 2007) (quotation omitted).

Plaintiff claims he was constructively discharged because he was met with discriminatory conduct at all levels of Defendant's chain of command. (Docket 37 at 12). His original supervisor, Mr. Boner, created an appearance of bias when Plaintiff was punished for similar actions done by white employees. *Id.* However as discussed above, this in no way affected Plaintiff's employment and, notably, Plaintiff was transferred to a new shift where he would no longer be under the supervision of Mr. Boner. (Docket No. 28 at 5). Plaintiff then claims to have experienced racial comments which he reported to Defendant's Human Resources Manager (Mr. Erickson) who called him a liar and overly sensitive rather than provide aid. (Docket No. 37 at 13). However, there is significant evidence that Mr. Erickson took Plaintiff's allegations seriously as he investigated the allegations, including performing witness interviews and requesting written statements. (Docket No. 28 at 7-8). Furthermore, when Plaintiff did not feel that Mr. Erikson was helping him enough, Defendant brought in the Plant Manager to assist in the situation so that Plaintiff would not leave his position. *Id.* at 9. Plaintiff argues, however, that this was also discriminatory conduct because the Plant Manager told Plaintiff he could move to a different position or shift, which would have "greatly affected Plaintiff's pay" and would have placed

Plaintiff on the same shift as the employee who initiated the KKK remarks. (Docket No. 37 at 13). There is no evidence presented that Plaintiff's pay would have been affected by any transfer or position change and no evidence that Plaintiff expressed his concerns regarding working with any of the individuals he identified as making racial comments. The only evidence presented regarding the conversation with the Plant Manager is Plaintiff's testimony that, despite the Plant Manager offering ways to resolve the situation, Plaintiff felt that there was no way he could continue to work at Cardinal and that he had to leave, without giving the Plant Manager a chance to look into his claims or address his concerns. (Docket No. 29, Exhibit A at 146:10-23).

When viewing the facts objectively and considering the totality of the circumstances, it is clear that Plaintiff has not presented necessary facts that could prove a claim of constructive discharge. As discussed, while Plaintiff made discrimination claims during his short time employed with Defendant, he never suffered any adverse employment action. Plaintiff simply cannot show that he suffered a hostile work environment with the limited instances of claimed racial harassment and no evidence of physical threat or harm. Even taking Plaintiff's version of the facts as true, Plaintiff's claims fail as a matter of law because his allegations do not rise to the level of such severe or pervasive harassment and objectively intolerable conditions that would have made a reasonable employee quit.

III.     Conclusion

Based on the facts presented and the evidence included to support the undisputed facts, Plaintiff cannot establish that he suffered any adverse employment actions that would support his claim of racial discrimination. Furthermore, Plaintiff cannot establish that he suffered severe or pervasive racial harassment to support a claim of hostile work environment or constructive

discharge.  As such, Plaintiff's claims fail as a matter of law. IT IS THEREFORE ORDERED that

Defendant Cardinal Glass Industries, Inc.'s Motion for Summary Judgment is hereby **GRANTED.**

IT IS SO ORDERED this __4th__ day of ____March_____, 2024.

_____
D. Edward Snow
United States Magistrate Judge